24CA2249 Peo in Interest of Hernandez 02-20-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA2249
Arapahoe County District Court No. 24MH761
Honorable H. Clay Hurst, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Erik Mateo Hernandez,

Respondent-Appellant.

---

ORDER AFFIRMED

Division III
Opinion by JUDGE MEIRINK
Dunn and Tow, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 20, 2025

---

Ronald Carl, County Attorney, Meghan Rubincam, Senior Assistant County
Attorney, Aurora, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1 Erik Mateo Hernandez appeals the district court's order authorizing the involuntary administration of medication. We affirm.

## I. Background

¶ 2 In 2023 Hernandez was committed to the Colorado Mental Health Institute at Fort Logan after being found incompetent to proceed in multiple criminal cases. In July 2024, Hernandez was transferred to the Restoring Individuals Safely and Effectively (RISE) program at the Arapahoe County Detention Facility for continued restoration services. Hernandez was diagnosed with schizophrenia and presented with negative symptoms including flat affect, lack of emotional expression, and slow movements. When the prior involuntary medication order expired Hernandez continued to take his medications voluntarily for about a week. However, as of December 16, 2024, Hernandez has consistently refused all medication. At the request of RISE staff psychiatrist Dr. Jonathan Thiele, the People petitioned the district court to authorize the involuntary administration of the medications Hernandez was taking — divalproex (Depakote), olanzapine (Zyprexa), risperidone (Risperdal), Vistaril, and Benadryl.

¶ 3    The district court held an evidentiary hearing at which Dr. Thiele and Hernandez testified.  Dr. Thiele explained Hernandez's disorder and accompanying symptoms.  And he described the requested mediations, their possible side effects, and their necessity for treating Hernandez's symptoms.  Hernandez denied having a mental illness, explaining that he does not have "the problems that they say I have."  Hernandez discussed the side effects he has experienced since being on the requested medications and he explained that his preference would be to not take any medication because he is "worried about [his] health."

¶ 4    Finding that Dr. Thiele testified "credibl[y]" the district court granted the petition in part and entered an order authorizing the involuntary administration of Risperdal, Zyprexa, and Benadryl. The court denied the petition as to Depakote and Vistaril.

II.    Legal Principles and Standard of Review

¶ 5    An involuntarily committed person retains the right to refuse treatment.  *See People v. Medina*, 705 P.2d 961, 971 (Colo. 1985). Even so, a court may authorize the involuntary administration of medication if the People prove the following elements by clear and convincing evidence:

(1) the patient is incompetent to effectively participate in the treatment decision;

(2) treatment by antipsychotic medication is necessary to prevent a significant and likely long-term deterioration in the patient's mental condition or to prevent the likelihood of the patient's causing serious harm to himself or others in the institution;

(3) a less intrusive treatment alternative is not available; and

(4) the patient's need for treatment by antipsychotic medication is sufficiently compelling to override any bona fide and legitimate interest of the patient in refusing treatment.

*Id.* at 963-64. We determine whether the evidence, viewed as a whole and in the light most favorable to the People, is sufficient to support the court's order. *People in Interest of R.K.L.*, 2016 COA 84, ¶ 13. A physician's testimony alone may be sufficient to satisfy the *Medina* test. *Id.* at ¶ 30.

¶ 6 Applying the *Medina* test presents a mixed question of fact and law, meaning we defer to the district court's factual findings if supported by the record but review its legal conclusions de novo. *People in Interest of R.C.*, 2019 COA 99M, ¶ 7. It is for the district court, as the fact finder, to determine witness credibility; the

sufficiency, probative effect, and weight of the evidence; and the inferences and conclusions to be drawn from it. *Id.*

## III. Discussion

¶ 7 Hernandez does not contest the district court's finding on the first and third *Medina* elements. However, he contends that the People did not present sufficient evidence to prove the second and fourth *Medina* elements. We disagree.

### A. The Second *Medina* Element

¶ 8 The second *Medina* element may be satisfied by showing either a significant and likely long-term deterioration or the likelihood of serious harm to self or others in the institution. *Medina*, 705 P.2d at 973.

¶ 9 To determine whether a patient is in danger of long-term deterioration, the court should consider the patient's need for the medication, including "the nature and gravity of the patient's illness, the extent to which the medication is essential to effective treatment, the prognosis without the medication, and whether the failure to medicate will be more harmful to the patient than any risks posed by the medication." *Id.* To determine whether a patient is at risk of causing physical harm, the court "should consider

4

whether the patient's mental condition is such that in the absence of the proposed treatment the patient will likely constitute a continuing and significant threat to the safety of [them]self or others in the institution." *Id.* at 973-74.

¶ 10 The district court found that the requested treatment was necessary both to prevent a significant long-term deterioration of Hernandez's mental condition and to prevent the likelihood of Hernandez causing serious harm to himself or others in the institution. This finding is supported by the record.

¶ 11 Dr. Thiele testified that the primary reason he sought an order for the involuntary administration of medication was "the concern for danger to others." Dr. Thiele explained that "there was some assaultive behaviors at Fort Logan." And since Hernandez's admission to the RISE program, there have been additional concerning incidents. During one incident, "staff felt threatened by [Hernandez]" and afterward the staff member expressed concern that "if [Hernandez] hadn't been medicated, she might have been assaulted." There was another incident where Hernandez "lunged" at staff with "balled up" fists and "threw milk" at a patient

¶ 12     Hernandez argues that this evidence is insufficient because the safety concerns were based almost entirely on behaviors occurring before Hernandez's admission to the RISE program and since Dr. Thiele became his treating psychiatrist, he has shown improvement. Thus, he asserts "it is not enough that the patient may have been violent on some occasion in the past." *Medina*, 705 P.2d at 974. But Dr. Thiele did not suggest that Hernandez's past violent behavior was isolated. Rather, Dr. Thiele's testimony suggests that Hernandez has a history of such behavior and given the more recent instances of aggression since his admission to the RISE program, it is likely that such behavior will continue in the absence of the proposed treatment.

¶ 13     Nor are we persuaded by Hernandez's assertion that Dr. Thiele's testimony "boils down to a general statement about schizophrenia" and by finding this element was satisfied "by such sweeping statements" the district court set a precedent that a schizophrenia diagnosis on its own is clear and convincing evidence that there is a likelihood of long-term deterioration.

¶ 14     Dr. Thiele opined that, without the requested medications, there would be significant and likely long-term deterioration in

Hernandez's mental condition. Dr. Thiele explained that if Hernandez stopped taking the requested medications "he would start to have psychotic symptoms . . . again." And he testified that research suggests that untreated schizophrenia can lead to "brain damage and cognitive issues" and can become "harder . . . to treat in the future." The district court expressly credited and adopted Dr. Thiele's testimony regarding Hernandez's mental illness and the reasons why the requested medications were necessary to prevent Hernandez from deteriorating finding it "sufficient and convincing." Because the record supports the court's determination, we will not disturb it and to the extent Hernandez asks us to second-guess witness credibility or draw different inferences from the testimony, we decline to do so. *See R.C.*, ¶ 7.

## B. The Fourth *Medina* Element

¶ 15 In assessing the fourth *Medina* element — whether the patient's need for treatment is sufficiently compelling to override any legitimate interest in refusing treatment — a court must consider "whether the patient's refusal is bona fide and legitimate" and, if it is, "whether the prognosis without treatment is so unfavorable that the patient's personal preference must yield to the

legitimate interests of the state in preserving the life and health of the patient placed in its charge and in protecting the safety of those in the institution." *Medina,* 705 P.2d at 974.

¶ 16 Hernandez contends that the district court failed to consider whether his refusal to take the requested medications — to avoid harmful side effects — is bona fide and legitimate and "applied an incorrect legal standard by phrasing the inquiry as to which party was more credible." We disagree.

¶ 17 The district court expressly acknowledged Hernandez's legitimate concern regarding potentially harmful side effects, including his complaints that the medications were making him itchy. However, after weighing witness credibility and the court's own observations of Hernandez during the hearing, the court was "not terribly convinced . . . that there is an itching component." Even so, the court denied the request to involuntarily administer Depakote, at least in part, based on evidence presented at the hearing that it was the likeliest cause of Hernandez's itchiness.

¶ 18 As to the additional adverse side effects referenced in Dr. Thiele's testimony, the district court found that Hernandez's "need for treatment by medication is sufficiently compelling to override

[his] objections." The record supports these findings. While Dr. Thiele testified that the requested medications had "hundreds" of adverse side effects, he also testified that the failure to medicate Hernandez would be more harmful than the risks that the medications posed. Moreover, he testified that RISE staff would monitor Hernandez for any additional side effects with periodic physical assessments, imaging, lab tests, and additional medications, if necessary.

¶ 19 We do not doubt that Hernandez's concerns in avoiding harmful side effects are bona fide and legitimate. However, because the record supports the district court's findings, we conclude it did not err by finding that any desire Hernandez might have in refusing the requested medications was overridden by his sufficiently compelling need for treatment. *See R.K.L.*, ¶¶ 13, 30.

## IV. Disposition

¶ 20 The order is affirmed.

JUDGE DUNN and JUDGE TOW concur.